## MARSH *v.* MARSHALL.

A deed contained the following description of a boundary: "A stake and stones by the bridge, thence running the southerly side of the cart path, to a stake and stones at the corner of Davis's meadow." *Held* that the description meant only a line running on the southerly side of the cart path, in contradistinction to a line running on the northerly side of it; and that a straight line on the southerly side, between the termini, was the true line.

Land was described in a deed as bounded " southeasterly by Blodgett's land, to Marshall's land, to an oak tree with stones about it." The oak tree was an undisputed bound. There was evidence that Blodgett's land did not extend to the oak tree. *Held* that the land described in the deed extended to the oak tree, which was the true boundary, and that whether Blodgett's land extended so far, or not, was immaterial.

TRESPASS, for breaking and entering the plaintiff's close, and cutting and carrying away his trees.

Plea, the general issue.

The plaintiff's right to recover depended upon the construction of the defendant's deed, which was the earliest title shown to the disputed premises.

By that deed, the defendant's boundary was " a stake and stones by the bridge, thence running the southerly side of the cart path, to a stake and stones at the corner of Davis's meadow."

It appeared that there was a cart path from " the stake and stones at the bridge," (an undisputed bound,) to a point at or near " the corner of Davis's meadow," which passed for a few rods near the bridge, on the south side of the straight line, to the corner of Davis's meadow, and the rest of the way on the north side of the straight line, at the distance of two to ten rods, as marked on the plan which is made part of the case.

There was a dispute as to the point where the stake and stones, at the corner of Davis's meadow, stood, and it was submitted to the jury to find that fact; and they decided that this bound was not upon the cart path, but at a point one rod twenty-one links southeasterly of it, at the point marked on the plan " *Lost corner.*"

The court instructed the jury, that in case they found that the bound at the corner of Davis's meadow was at the point marked " *Lost corner,*" they should take the true construction of the defendant's deed to be a straight line from the bound at the bridge to the lost corner, and should therefore find their verdict for the plaintiff.

The plaintiff offered a deed to himself, by which he was bounded " southeasterly by Blodgett's land, to Marshall's land, to an oak tree with stones about it, thence by Marshall's land, southwesterly," to the bound at the bridge.

The defendant offered evidence tending to show that Blodgett's land extended only to the cart path, and not " to

the oak tree with stones about it," which was about a rod from the cart path, and its position not disputed.

The court ruled that the evidence was inadmissible, the bound referred to in the plaintiff's deed, " the oak tree with stones about it," being undisputed, it was wholly immaterial where the bounds of Blodgett's land were.

The jury found a verdict for the plaintiff.

If the instructions and ruling of the court are sustained, judgment is to be rendered on the verdict, otherwise the verdict is to be set aside, and a new trial granted.

*Farley*, for the defendant.

The difficulty arises from certain doubtful expressions in the deed to the defendant. We say that the language of the deed bounds the defendant on the south side of the cart path. The description begins at a monument at the bridge. This was on the south side of the cart path, as appears by the plan and case. Thence the line runs on the south side of the cart path, to the lost corner. The plaintiff says that merely these words in the description, " thence running the southerly side of the cart path," do not confine the line to the cart path, and that the meaning is the same as if the land were bounded *upon* or *by* the cart path. Now if we admit that the construction is doubtful, then the deed should be construed most favorably to the grantee. As to the construction of the deed, we stand as the grantee would, if the grantor were the plaintiff. *Tenney* v. *Beard*, 5 N. H. Rep. 58; *Darling* v. *Crowell*, 6 N. H. Rep. 421 ; *Cochecho Man. Co.* v. *Whittier*, 10 N. H. Rep. 305. The construction of the deed should be such that the whole of it should take effect. *Webster* v. *Atkinson*, 4 N. H. Rep. 21. The deed describes the line as running on the southerly side of the cart path, but this line, which is a straight one, crosses the cart path. The words, " the southerly side of the cart path," are superfluous, if you adopt the plaintiff's construction. In *Rix* v. *Johnson*, 5 N. H. Rep. 520, a line ran to a stake " *at* the river," thence " *on* the river," thence by certain courses and distances to a stake " *by* the river," and it was held that this description made the river a boundary. *Claremont* v. *Carleton*, 2 N. H. Rep. 372; *Enfield* v. *Day*, 11 N. Rep. 520; *Ipswich Petitioners, &c.*, 13 Pick. 431 ; *Lunt* v. *Holland*, 14 Mass. 149 ; *Jackson* v. *Loud*, 12 Johns. 252.

*E. P. Parker*, for the plaintiff.

The question is, should the line run straight from the bridge, or should it follow the cart path. We say it should run straight from the bridge, and such is clearly the case,

*prima facie,* and there is nothing in the words " the southerly side of the cart path," to control this construction. The case of *Rix* v. *Johnson,* 5 N. H. Rep. 520, is a decision in our favor. In that case the words *at* and *by* only mean *near.* The case of *Bowman* v. *Farmer,* 8 N. H. Rep. 402, corroborates our position. In that case, it was held that the words " running from thence up said brook," did not necessarily imply that the line was to run *on* or *by* the brook. In the present case, the monument is situated one rod and twenty-one links from the road, and the line must follow the road until it comes to a point opposite the cart path. The monument is at the bridge, not at the cart path, the latter not being mentioned in this connection. It may be inferred from the case that the cart path is crooked, and this is shown by the plan, and we may suppose it varies from year to year. The words of the description meant only that the line should run southerly of the cart path, and not that it should run upon the cart path. *Frost* v. *Spalding,* 19 Pick. 445; *Blaney* v. *Rice,* 20 Pick. 62.

*Farley,* in reply. We must infer that the cart path was a known line, and the parties probably would not set up monuments upon it, as they would be unnecessary.

*J. U. Parker.* A line may be a monument, but it never has been held that such a *running* monument was a boundary, unless the words *by* or *on,* or their equivalents, were used.

GILCHRIST, C. J. The question in this case is, where is the true line between the land of the plaintiff and the land of the defendant.

The beginning is at an undisputed corner, the stake and stones by the bridge; thence the line runs on the southerly side of the cart path, to a stake and stones at the corner of Davis's meadow.

The jury having found the corner of Davis's meadow to be the point marked " Lost corner," the question is, how the line should run from the bridge to this lost corner.

The line between these points should be a straight line, unless there be something to control it and cause it to deviate from a straight line. Whether there be any thing to control it, must depend on the construction of the words " running the southerly side of the cart path."

The argument is, that these words mean nothing more than a line running on the southern side of the cart path, in contradistinction to a line running on the northern side of it, and that if the line so runs, the description in the deed is answered by proceeding in a straight line to Davis's corner.

And this we think is the true construction. We are not embarrassed by the use of the words *by, upon, on* or *along* the cart path ; words which have been construed to carry a line on the same course, and following the variations of the land, stream or highway *upon* or *along* which it is bounded. But here the only condition is that the line shall go southerly of the cart path. There it must go, according to the plain letter of the description, and there is nothing to cause it to swerve from a direct course, except the necessity of complying with this condition. The line is a straight one, unless where it is necessary to diverge in order to go southerly of the cart path. From the point of divergence to the " lost corner," the line must be straight. The ruling of the court did not allude to or make any allowance for this divergence at all, but required the line to be straight from one terminus to the other. Of this, however, the defendant cannot complain, as he thereby, if the ruling were correct, would get more land than upon the construction we give the deed, he is entitled to. The small triangular piece made by running the line straight from point to point, near the bridge, is the property of the plaintiff, as it is northerly of the cart path, according to our construction.

The evidence offered by the defendant was properly rejected. The plaintiff's deed, which, it is to be inferred from the case, was offered to show his title to the land, authorized him to go southeasterly by Blodgett's land, to *Mar-*

*shall's land, to an oak tree with stones about it.* In order to get to Marshall's land, he was to go *by* Blodgett's land. How far, then, does the plaintiff's land extend? And where does it terminate? Is it at the extremity of Blodgett's land, or is it the oak tree? It does not follow that the plaintiff's land was bounded all the way by Blodgett's land. We have held that the *line* of a tract of land is a monument. *Brett* v. *Young*, 11 N. H. Rep. 485; *Enfield* v. *Day*, 11 N. H. Rep. 520. But it is a more general description of a monument than that which follows, that is, *the oak tree with stones about it*, which is an undisputed bound, and up to which the plaintiff was authorized to go. It follows, then, that the evidence as to the extent of Blodgett's land was immaterial, because Blodgett's land was not the test by which to determine the extent of the plaintiff's rights, the true criterion being the oak tree.

*Judgment on the verdict.*